**Rodney Tyrone BLAYLOCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–02–00214–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 12, 2003.

Decided Dec. 11, 2003.

---

Clement Dunn, Attorney At Law, Longview, for appellant.

Renee Gartland, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Rodney Tyrone Blaylock—as predicted by informant Florence Thomas—pulled up to the gasoline pumps at a Kilgore, Texas, convenience store, in a car fitting the description given by Thomas, at the time she had stated. Officers arrested Blaylock, searched the car, and found cocaine under the hood, ultimately confirming Thomas' information. From Blaylock's conviction by a Gregg County jury for possession of a controlled substance with intent to deliver and the resulting sixty years' confinement and a $5,000.00 fine, Blaylock now appeals, contending the trial court erred in (1) denying his motion to suppress, (2) allowing testimony of extraneous offenses, (3) excusing a veniremember on the State's challenge for cause, and (4) giving the jury an instruction concerning parole. We affirm.

### Background Facts

The informant, Florence Thomas, had begun this sequence of events by telling Jason Brannon, a Kilgore police detective assigned to the County Organized Drug Enforcement Unit, that she could arrange a drug sale with Blaylock, from whom she said she had purchased cocaine on several prior occasions. Forty minutes later, after the informant arranged a meeting with Blaylock to purchase two ounces of cocaine, she again contacted Brannon, this time describing Blaylock's car and predicting that Blaylock would arrive at a particular local convenience store within twenty minutes and that the cocaine would be hidden under his car's hood. When Blaylock arrived as planned, he parked at the gasoline pumps, stepped out of the car, and reached for a gasoline nozzle before undercover officers approached him, handcuffing him and checking for weapons.

The officers, attempting to protect the identity of their informant, did not immediately search under the hood of the car, but began simultaneous searches of Blaylock and the trunk and interior of Blaylock's car. When the officers finally looked under the hood, they discovered what later turned out to be 53.29 grams of crack cocaine wrapped in foil.

### Motion to Suppress

In his first point of error, Blaylock contends the trial court erred in denying his motion to suppress because the arresting officers lacked probable cause for his prolonged detention and the search of his car. Although the police acted on information provided by an informant, Blaylock asserts

that the informant's reliability was questionable and, despite the State's claim of thorough police corroboration, the only independently corroborated information provided by the informant was the description of Blaylock's car—information that could have been supplied by anyone.

When reviewing a trial court's ruling on a motion to suppress, appellate courts apply a bifurcated standard of review, affording a trial court's determination of historical facts almost total deference while reviewing de novo the court's application of the law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim.App.2002). Under this standard, if the issue involves the credibility of a witness, making an evaluation of that witness' demeanor important, we will defer to the trial court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). If the issue concerns the application of law to undisputed facts, however, the trial court is not in an appreciably better position than the reviewing court in making such a determination and we will review the issue de novo. *Id.* Because the facts underlying the trial court's ruling on Blaylock's motion to suppress are undisputed, and because the question is whether probable cause existed at the time of the search or seizure, we review the issue de novo. Even so, we will not disturb the trial court's ruling on review if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996)).

The federal and state Constitutions both guarantee the right to be secure from unreasonable searches and seizures made without probable cause, U.S. CONST. amend. IV; TEX. CONST. art. I, § 9, and

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2004), forbids any evidence obtained in violation thereof to be admitted against an accused. There are, however, certain exceptions to the warrant requirement under which federal and state law allows warrantless searches. Applicable in this case is the automobile exception, which permits officers to conduct a warrantless search of an automobile as long as there is probable cause to believe that a crime has been committed and that there is contraband located in the vehicle and "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Chambers v. Maroney*, 399 U.S. 42, 48–49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Amos v. State*, 819 S.W.2d 156, 160–61 (Tex.Crim.App.1991). If so, officers are justified in searching every part of the vehicle and any contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

In determining probable cause, courts must consider the totality of the circumstances. *Angulo v. State*, 727 S.W.2d 276, 278 (Tex.Crim.App.1987). Although probable cause requires more than mere suspicion, it requires far less evidence than is needed to support a conviction or even a finding by a preponderance of the evidence. *Middleton v. State*, 125 S.W.3d 450, 457, No. 1263–01, 2003 WL 1918104, at *3, 2003 Tex.Crim.App. LEXIS 73, at *22 (Tex.Crim.App. Apr. 23, 2003). Instead, probable cause exists where officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *McGee v. State*, 105 S.W.3d 609, 614 (Tex.Crim.App.2003).

■ Contrary to Blaylock's claim that the arresting officers lacked probable cause, the record indicates the officers were reasonable in believing Blaylock possessed contraband concealed in his car. In the pretrial hearing on Blaylock's motion to suppress, Brannon testified that Thomas had, on approximately ten prior occasions, purchased narcotics from Blaylock. She would call him by telephone, request a specific quantity of narcotics, and then meet him at a prearranged location to complete the transaction. Following the same procedure in this case, officers requested that the informant arrange to purchase from Blaylock two ounces of cocaine at $1,000.00 per ounce. After making these arrangements, the informant described Blaylock's car to officers, telling them that he was to meet her at a nearby convenience store within the next twenty minutes and that the cocaine would be hidden under the car's hood. Officers subsequently verified the description of Blaylock's car and set up surveillance at the designated store.

In addition to the informant accurately describing Blaylock's car, the State asserts that probable cause was established when Thomas was also able to accurately predict the location and time of the arranged meeting. Blaylock, however, dismisses the fact that Thomas was able to anticipate when he would arrive at the convenience store because the officers had no independent knowledge regarding Thomas' telephone conversation with him and because they had nothing corroborating what she might have told him in order to get him to drive to that particular location. Specifically, Blaylock asserts there is nothing about traveling to a convenience store that would suggest any involvement in drug trafficking. While we agree that such an activity, alone, is insufficient to suggest any wrongdoing, it is a factor that cannot be ignored when considering the totality of the circumstances. Although police officers may personally observe behavior that is not overtly criminal, when coupled with the officers' prior knowledge it may, nevertheless, be sufficient to establish probable cause that an offense has been or is being committed. *Lunde v. State,* 736 S.W.2d 665, 667 (Tex.Crim.App.1987); *see Munoz v. State,* No. 14–00–01531–CR, 2002 WL 480295, at *6, 2002 Tex.App. LEXIS 2317, at *18–19 (Tex.App.-Houston [14th Dist.] Mar. 28, 2002, no pet.) (not designated for publication). Under the totality of the circumstances, we hold that probable cause existed for Blaylock's detention and the search of his car. The trial court, therefore, did not err in denying Blaylock's motion to suppress.

*Extraneous Offense Evidence*

In his second point of error, Blaylock claims the trial court erred in admitting extraneous offense evidence. He argues that allowing evidence of his prior narcotics transactions with Thomas unfairly prejudiced the jury and could only have had the effect of distracting its members from the details of the State's case, focusing instead on the State's general portrayal of him as a drug dealer. We disagree.

■ While evidence of a person's bad character is not normally admissible to demonstrate his or her criminal propensities, such evidence may still be admissible if it has relevance apart from character conformity. *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App.2003). One of the permissible purposes for which relevant evidence may be admitted, for example, is the rebuttal of a defensive theory. *Id.* (citing *Crank v. State,* 761 S.W.2d 328, 341 (Tex.Crim.App.1988), *overruled on other grounds, Alford v. State,* 866 S.W.2d 619 (Tex.Crim.App.1993)). Taking this position at trial and on appeal, the State contends Thomas' testimony concerning prior

narcotics transactions with Blaylock was necessary after Blaylock's cross-examination of one of the State's principal witnesses.

■ During his cross-examination of Brannon, Blaylock's counsel clearly suggested that the arresting officers did not use their full forensic capabilities in processing the evidence and that, if they had, it would have indicated that Thomas had planted the cocaine in Blaylock's car in an attempt to frame him. Responding to this defensive theory, the State not only questioned Thomas about events leading up to Blaylock's arrest, but also concerning the nature of her past dealings with Blaylock to demonstrate how she knew he typically concealed drugs under the hood of his car. Thomas' testimony was simply that she had made narcotics purchases from Blaylock on several prior occasions and described the procedure that would be followed from her initial request to completing the transaction.

■ The admissibility of evidence is within the sound discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Moses,* 105 S.W.3d at 627. A trial court's determination that extraneous offense evidence has relevance apart from character conformity is no different than any other relevancy determination and will be afforded great deference as long as the trial court's ruling is within the zone of reasonable disagreement and the probative value of the evidence is not found to be outweighed by the danger of unfair prejudice. *Id.* Noting the Texas Court of Criminal Appeals' admonition that such a review will rarely result in reversal, *id.* (citing *United States v. Maggitt,* 784 F.2d 590, 597 (5th Cir.1986); *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App.1991)), we hold that the trial court did not abuse its discretion by allowing Thomas to testify of extraneous offenses from which she learned how Blaylock operated.

*Excusing a Veniremember*

■ In his third point of error, Blaylock argues that the trial court erred in excusing a veniremember on the State's challenge for cause. After reviewing the record, however, including the following excerpt of the State's questioning of the veniremember, we cannot say the trial court's action was erroneous.

Q  You think those feelings prevent you from rendering a verdict in this case because you feel as though you may not be making a right decision?

A  I do.

Q  Is that going to prevent your ability to make a decision in this case?

A  I think it would.

Q  Therefore, you think it would possibly make my burden higher to prove to you beyond a reasonable doubt?

A  Yes.

Q  I would have to prove it to you 100 percent—

    . . . .

Q  I might have to prove it to you beyond a reasonable doubt 100 percent before you feel comfortable finding someone guilty?

A  Well, sort of, yes. You could say that, but not so much. It's just my understanding. I think my understanding is not—I can't comprehend as far as law [sic] I'm saying.

Q  Do you think it would be better if you did not sit as a juror in this case because of your feelings about judgment?

A  I do. I came because I was called, but I would rather not.

Q If you were selected as a juror in this case and were asked to pass judgment and make a determination of guilt or innocence, what would you do?

A I would do my best, yes.

Q Would that feeling—those feelings of not wanting to do it hinder one side or the other in your decision?

A Well, that's why I don't want to. I would rather not, but if I was called I would do my best is all I can do.

Q Let me ask you this. Would it make it more difficult for me to prove him guilty if you were called as a juror because of your feelings of not wanting to pass judgment?

A It probably would.

Q It has to be a yes or no. Would it make my job more difficult in the burden of proof because you would not feel comfortable passing judgment?

A Yes.

This exchange provides a clear basis on which the trial court could have concluded this particular veniremember was unable or unwilling to apply the appropriate standard. We hold, therefore, that the trial court acted well within its discretion in granting the State's challenge for cause.

*Jury Instruction on Parole*

In his fourth point of error, Blaylock contends that, during the punishment phase of trial, the court erroneously instructed the jury concerning parole. Recognizing that the instruction given has been "legislatively authorized and judicially approved," Blaylock nevertheless argues that the instruction is paradoxical, inconsistent, ambiguous, contradictory, and violates both the due process and due course of law requirements of the United States and Texas Constitutions, respectively. As the Texas Court of Criminal Appeals has already directly addressed these issues, however, this Court is bound and must overrule this point of error. *See Muhammad v. State,* 830 S.W.2d 953, 956 (Tex. Crim.App.1992) (en banc) (holding parole instruction does not violate federal due process); *Oakley v. State,* 830 S.W.2d 107, 110 (Tex.Crim.App.1992) (en banc) (applying simple rules of construction clearly removes alleged due course of law taint).

*Conclusion*

The trial court did not err in denying Blaylock's motion to suppress, admitting extraneous offense evidence, excusing a prospective juror for cause, and instructing the jury on parole. We, therefore, affirm the judgment of the trial court.