In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00057-CR
______________________________


ANNA P. CISNEROS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2003-1367


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â After Trooper Lloyd McKinney stopped Anna P. Cisneros for speeding along Interstate
Highway 20 in Harrison County, he asked Cisneros for consent to search her vehicle, and she
refused. After McKinney misrepresented to Cisneros that he did not need a warrant to search a car,
she first told him there was nothing in the car and then told him to "go ahead." McKinney's
warrantless search uncovered less than two ounces of marihuana, and Cisneros was charged with its
possession. See Tex. Health & Safety Code Ann. Â§ 481.121 (Vernon 2003). The trial court
overruled her motion to suppress the evidence.



Â Â Â Â Â Â Â Â Â Â Â Â On appeal, in response to Cisneros' contention that the trial court erred by overruling her
motion to suppress, the State expressly limits its argument to the sole assertion that McKinney's
search was lawful because Cisneros gave valid consent to the search.


 We review the trial court's
decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to
the trial court's determination of historical facts that depend on credibility, but reviewing de novo
the trial court's application of the law. Burke v. State, 27 S.W.3d 651, 654 (Tex. App.âWaco 2000,
pet. ref'd). We review de novo those questions not turning on credibility and demeanor. Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Our review of probable cause concerning
a warrantless search is reviewed de novo. See Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997). We will affirm the trial court's ruling if the ruling is reasonably supported by the record and
is correct on any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543â44
(Tex. Crim. App. 1990); Shaw v. State, 122 S.W.3d 358, 363 (Tex. App.âTexarkana 2003, no pet.).
Â Â Â Â Â Â Â Â Â Â Â Â The federal and state Constitutions both guarantee the right to be secure from unreasonable
searches Â and Â seizures Â made Â without Â probable Â cause. Â U.S. Â Const. Â amend. Â IV; Â Tex. Â Const.
art. I, Â§ 9. Article 38.23(a) of the Texas Code of Criminal Procedure forbids any evidence obtained
by an unreasonable search to be admitted against an accused. See Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005). When a state official acts without a valid warrant and searches a citizen's
private property, that search is per se unreasonable unless an exception to the Fourth Amendment's
warrant requirement otherwise permits the search. Katz v. United States, 389 U.S. 347, 357 (1967);
Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003).
Â Â Â Â Â Â Â Â Â Â Â Â We reverse because we find the evidence shows (1) Cisneros did not voluntarily consent to
the search, and (2) McKinney lacked probable cause to search Cisneros' vehicle.
1. Cisneros Did Not Voluntarily Consent To Have Her Vehicle Searched
Â Â Â Â Â Â Â Â Â Â Â Â Consent to search is "one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause." Carmouche v. State, 10 S.W.3d 323, 331 (Tex.
Crim. App. 2000) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Ibarra, 953
S.W.2d 242, 243 (Tex. Crim. App. 1997)).
But the Fourth and Fourteenth Amendments require that a consent not be coerced,
by explicit or implicit means, by implied threat or covert force. For, no matter how
subtly the coercion were applied, the resulting "consent" would be no more than a
pretext for the unjustified police intrusion against which the Fourth Amendment is
directed.
Â 
Schneckloth, 412 U.S. at 228. The test for valid consent is whether it is voluntarily given. Id.;
Carmouche, 10 S.W.3d at 331.
[W]hen the subject of a search is not in custody and the State attempts to justify a
search on the basis of his consent, the Fourth and Fourteenth Amendments require
that [the State] demonstrate that the consent was in fact voluntarily given, and not the
result of duress or coercion, express or implied. Voluntariness is a question of fact
to be determined from all the circumstances, and while the subject's knowledge of a
right to refuse is a factor to be taken into account, the prosecution is not required to
demonstrate such knowledge as a prerequisite to establishing a voluntary consent.
Â 
Schneckloth, 412 U.S. at 248â49. To determine whether a defendant's will was overborne in a
particular case, the reviewing court should assess "the totality of all the surrounding
circumstancesâboth the characteristics of the accused and the details of the interrogation." Id. "The
federal constitution requires the State to prove the validity of the consent by a preponderance of the
evidence; the Texas Constitution requires the State to show by clear and convincing evidence that
the consent was valid." Rayford, 125 S.W.3d at 528. We hold the State failed to show consent,
judged by either standard.
Â Â Â Â Â Â Â Â Â Â Â Â In Bumper v. North Carolina, 391 U.S. 543, 546 (1968), four law enforcement officers
appeared at an elderly widow's home and informed her that they had a warrant to search the home. 
After the widow allowed them to enter her home, the officers found a rifle, which was introduced
into evidence at Bumper's rape trial. Id.


 The Court held the search violated the Constitution
because the widow's consent had been given only after the official conducting the search asserted
he had a warrant, which he, in fact, did not have. Id. The Court reasoned that once the officers had
announced they had a search warrant, they were, in effect, telling the homeowner she could not
lawfully resist the search. Id. Describing the impact of the officer's claim of a warrant on the
widow's decision to grant consent, Justice Potter Stewart wrote, "This situation is instinct with
coercionâalbeit colorably lawful coercion. Where there is coercion there cannot be consent." Id. 
The Court then reversed Bumper's conviction.
Â Â Â Â Â Â Â Â Â Â Â Â In the case now on appeal, the following exchange between McKinney and Cisneros occurred
during the traffic stop:
McKinney:Â Â Will you give me consent to search your vehicle?
Â 
Cisneros:Â Â Â Â Â Â No, sir. I can't do that.
Â 
McKinney:Â Â Why not?
Â 
Cisneros:Â Â Â Â Â Â Cause my attorney told me don't ever let nobody [sic] search it without
a warrant.
Â 
McKinney:Â Â You don't need a search warrant for a vehicle, a car.
Â 
Cisneros:Â Â Â Â Â Â No?
Â 
McKinney:Â Â No.
Â 
Cisneros:Â Â Â Â Â Â Oh. I didn't know that. Well, there's nothing there.
Â 
McKinney:Â Â So will you give me consent to search?
Â 
Cisneros:Â Â Â Â Â Â Yeah. Go ahead.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â McKinney's statement to Cisnerosâthat he did not need a search warrant to be able to search
a vehicleâwould have been true only under limited conditions that are not present here. An officer
may search a vehicle without a warrant (1) if there is probable cause


 to believe that a crime has been
committed, (2) if there is probable cause to believe that contraband is located in the vehicle, and
(3)Â "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of
the locality or jurisdiction in which the warrant must be sought." Blaylock v. State, 125 S.W.3d 702,
705 (Tex. App.âTexarkana 2003, pet. ref'd) (quoting Chambers v. Maroney, 399 U.S. 42, 48â49
(1970); and citing Amos v. State, 819 S.W.2d 156, 160â61 (Tex. Crim. App. 1991)). Nor does an
officer need a warrant to search a vehicle if the operator voluntarily consents and that consent has
not been coerced. State v. Hunter, 102 S.W.3d 306, 310 (Tex. App.âFort Worth 2003, no pet.)
(citing Florida v. Royer, 460 U.S. 491, 497â98 (1983); Johnson v. State, 912 S.W.2d 227, 235 (Tex.
Crim. App. 1995)). Yet McKinney's statement regarding his ability to search a vehicle without a
warrant clearly suggested to Cisneros that he could search her vehicle regardless of any other
considerations, in spite of Cisneros' previously expressed refusal to consent. And it is clear from the
record before us that Cisneros would not have given consent absent McKinney's mischaracterization
of the law.
Â Â Â Â Â Â Â Â Â Â Â Â In essence, McKinney's statement (if sanctioned by this Court), would, without more, allow
the automobile exception to swallow the rule against unreasonable searches and seizures by allowing
officers to suggestâfalselyâthat people lack the right to resist an automobile search. McKinney's
statement is coercive, in much the same way as the assertion in Bumper was held by the United
States Supreme Court to violate the defendant's constitutional rights. See Bumper, 391 U.S. at 546;
see also Erdman v. State, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993) (officer's misinformation
asserted "considerable psychological pressure" on accused; refusal to suppress evidence was abuse
of discretion). Accordingly, Cisneros' consent was coerced, and McKinney's search could not be
justified on that basis.
Â 
Â 
2. There Was No Probable Cause To Search
Â Â Â Â Â Â Â Â Â Â Â Â Because we must affirm the trial court's ruling if it is correct on any ground applicable to the
case, we next address whether probable cause existed to justify the search. We conclude it did not.
Â Â Â Â Â Â Â Â Â Â Â Â The "automobile exception" authorizes an officer to conduct a warrantless search of an
automobile as long as the officer reasonably believes (1) there is probable cause to believe that a
crime has been committed, (2) there is contraband located in the vehicle, and (3)Â "it is not practicable
to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in
which the warrant must be sought." Chambers, 399 U.S. at 48â49; Amos, 819 S.W.2d at 160â61. 
If the automobile exception authorizes an officer's search, the officer is permitted to search every part
of the vehicle, as well as any contents therein, that may conceal the object of the search. United
States v. Ross, 456 U.S. 798, 825 (1982); Blaylock, 125 S.W.3d at 705.
In determining probable cause, courts must consider the totality of the circumstances. 
Angulo v. State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable
cause requires more than mere suspicion, it requires far less evidence than is needed
to support a conviction or even a finding by a preponderance of the evidence. 
Middleton v. State, 125 S.W.3d 450, 457 (Tex. Crim. App. 2003). Instead, probable
cause exists where officers have reasonably trustworthy information sufficient to
warrant a reasonable belief that an offense has been or is being committed. McGee
v. State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003).
Â 
Blaylock, 125 S.W.3d at 705; see also Devenpeck, 125 S.Ct. at 593. "The articulable facts used by
the officer must create some reasonable suspicion that some activity out of the ordinary is occurring
or has occurred, some suggestion to connect the detainee with the unusual activity, and some
indication the unusual activity is related to crime." Autry v. State, 21 S.W.3d 590, 592 (Tex.
App.âHouston [1st Dist.] 2000, no pet.) (citing Meeks v. State, 653 S.W.2d 6, 12 (Tex. Crim. App.
1983)).
Â Â Â Â Â Â Â Â Â Â Â Â Under the Texas Court of Criminal Appeals' interpretation of Terry v. Ohio, 392 U.S. 1
(1968), and its progeny, the police must be able to articulate facts that support a reasonable suspicion
that the suspect is engaging in, or is about to engage in, criminal activity. See Davis v. State, 947
S.W.2d 240, 242â44 (Tex. Crim. App. 1997). Such stops are generally referred to as "investigative
detentions." "Additionally, Texas Courts recognize that investigative detentions become
unreasonable when they are not reasonably related in scope to the circumstances which justified the
interference in the first place." Id. Moreover, the detention "must be temporary and last no longer
than necessary to effectuate the purpose of the stop. The police may not carry out a full search of
the person or his effects. Nor may they verify their suspicions by means that approach an arrest." 
Id. (quoting Collier v. State, 843 S.W.2d 176, 177 (Tex. App.âHouston [14th Dist] 1992, no pet.));
see also Florida v. Royer, 460 U.S. 491, 500 (1983). "[O]nce the reason for the stop has been
satisfied, the stop may not be used as a 'fishing expedition for unrelated activity.'" Davis, 947
S.W.2d at 243 (quoting Ohio v. Robinette, 519 U.S. 33, 41 (1996)). 
Â Â Â Â Â Â Â Â Â Â Â Â "The propriety of the stop's duration is judged by assessing whether the police diligently
pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." 
Davis, 947 S.W.2d at 245 (quoting Perez v. State, 818 S.W.2d 512, 517 (Tex. App.âHouston [1st
Dist.] 1991, no pet.)). In a traffic stop situation, the police may ask for identification, a valid driver's
license, and proof of liability insurance. Davis, 947 S.W.2d at 245 n.6. Police may also check for
outstanding warrants. Id. During the stop, however, an officer must use "the least intrusive means
reasonably available to verify or dispel the officer's suspicion in a short period of time." Id.
Â Â Â Â Â Â Â Â Â Â Â Â In this case, the parties do not contest the reasonableness of the initial traffic stop, in that
Cisneros was driving at seventy-nine miles per hour in a seventy-mile-per-hour zone. We therefore
begin with the assumption that Cisneros' initial detention for speeding was reasonable. Under the
authorities previously discussed, McKinney's detention of Cisneros "was required to be temporary
and could last no longer than was necessary" to satisfy or dispel the officer's original suspicion of
speeding and to conclude the stop. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Therefore, we are to examine the totality of the circumstances


 known by McKinney during
the legitimate traffic stop


 and determine whether these circumstances provided McKinney with
probable cause to search the vehicle. While the evidence provides some suspicious circumstances,
it Â falls Â short Â of Â the Â probable Â cause Â necessary Â to Â justify Â McKinney's Â search, Â regardless Â of
whether (1) McKinney's detention of Cisneros was justified only until he determined to issue
Cisneros a warning ticket for excessive speed, or (2) detention was justified until the warning was
actually issued some minutes later.



Â Â Â Â Â Â Â Â Â Â Â Â a. Passenger's "Sleep" and Avoidance
Â Â Â Â Â Â Â Â Â Â Â Â When McKinney initially approached the vehicle,


 he did so from the passenger's side. He
noticed that the passenger had his seat in a reclining position and appeared to be asleep. This,
however, made McKinney uneasy, because it has been his experience that people usually awaken
or sit up when a vehicle stops. Moreover, McKinney later determined that the passenger was not
asleep, yet the passenger had pretended to be asleep and still refused to make eye contact with
McKinney once the passenger had "awakened." That certainly may trigger some suspicion, but it
does not necessarily indicate the passenger's consciousness of some criminal guilt.
Â Â Â Â Â Â Â Â Â Â Â Â b. Cisneros' Nervousness
Â Â Â Â Â Â Â Â Â Â Â Â McKinney testified that, while awaiting completion of a check on Cisneros' and the
passenger's driver's licenses and criminal histories, he observed Cisneros behaving nervously and
fidgeting. According to McKinney, "She was moving back and forth, scratching, running her hand
through her hair, looking at the vehicle, rubbing on the trunk of the vehicle. Things I had never
experienced other drivers doing on a traffic stop." McKinney testified these behaviors were
consistent with a state of heightened nervousness and suggested Cisneros was either planning to fight
with, or flee from, the trooper. The videotape of the traffic stopâintroduced into evidence by the
Stateâshows Cisneros variously smoking a cigarette, leaning against a vehicle, standing, and
sometimes pacing between her car and McKinney's. Her nervousness on the videotapeâshown by
running her fingers through her hair, some pacing around the rear of her vehicle, and smoking a
cigarette during the six minutes she waited alone at the rear of her car while McKinney ran a check
of her licenseâdoes not appear to be aberrational behavior for a woman who had been pulled over
along the interstate and made to stand alone at the rear of her vehicle for a period of time, during
which time she was stung by ants.


 Nervousness, aloneâsometimes even combined with other
factorsâdoes not supply probable cause. See Hamel v. State, 582 S.W.2d 424, 426 (Tex. Crim.
App. 1979).
Â Â Â Â Â Â Â Â Â Â Â Â c. Cisneros' Trip to Her Car
Â Â Â Â Â Â Â Â Â Â Â Â McKinney also testified he saw Cisneros later walk to the passenger-side window of her
vehicle, say something to her passenger, and point toward the back seat before returning to stand at
the rear of the vehicle. The suggestion is that such activity was a suspicious circumstance. While
McKinney's account is true as far as it goes, the videotape reveals that Cisneros' trip to the side of
her car and her pointing to the back seat was associated with her successful effort to get her shoes
and put them on, after being stung by ants while on the side of the road.
Â Â Â Â Â Â Â Â Â Â Â Â d. "Conflicting" Stories
Â Â Â Â Â Â Â Â Â Â Â Â McKinney testified Cisneros and her passenger gave conflicting stories about the purpose of
their travel and their intended destination. We have reviewed the record of these stories and do not
detect any necessary conflict in them. Cisneros told McKinney she and her passenger were going
to gamble at a Shreveport casino. Her passenger initially said they were going to Shreveport but he
did not know where, then that he was just riding with her, but finally that they were going to gamble
in Shreveport. While the passenger's answers could have evidenced evasiveness, they could also
have come from normal, and innocent, imprecision in communication.
Â Â Â Â Â Â Â Â Â Â Â Â e. Passenger's Lack of Identification
Â Â Â Â Â Â Â Â Â Â Â Â McKinney also cited as suspicious his observation that, although the passenger claimed to
be headed to Shreveport to gamble, he did not have any form of identification. McKinney stated it
was his experience that the Shreveport casinos require gamblers to present identification before they
were allowed access to the casino floor. We note the passenger's comment that he had never been
to Shreveport to gamble. His lack of identification could have been because of his lack of experience
with Shreveport casinos. And given that he appeared to be well into, if not above, his thirties, it is
quite possible that he did not anticipate needing identification to gain acceptance into a casino.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â f. Cisneros' and Passenger's Arrest Records
Â Â Â Â Â Â Â Â Â Â Â Â McKinney's suspicions were heightened after both Cisneros' and the passenger's criminal
histories returned with recent drug and weapons arrests. Certainly, that provides proper fuel for
suspicion.
Â Â Â Â Â Â Â Â Â Â Â Â Based on the facts, McKinney concluded he had probable cause to search the vehicle for
drugs. He admitted on cross-examination, however, that he did not have probable cause to search
the vehicle, but needed to rely on Cisneros' consent to justify the search. 
Â Â Â Â Â Â Â Â Â Â Â Â From the totality of the circumstances, we hold McKinney's search was not based on probable
cause, that is, he did not have articulable facts that, when taken together with rational inferences
from such facts, "would warrant a person of prudence and caution in believing that an offense had
been or is being committed." See McCallum v. State, 608 S.W.2d 222, 223 (Tex. Crim. App. 1980). 
McKinney had no articulable facts available to himâbefore concluding the traffic stop for speeding
and issuing a warning ticket, nor even after his subsequent, prolonged questioning of Cisnerosâthat
indicated Cisneros or her passenger was engaged in criminal conduct. See Davis, 947 S.W.2d at
245â46; McQuarters v. State, 58 S.W.3d 250, 256â58 (Tex. App.âFort Worth 2001, pet. ref'd). 
Consequently, the trial court erred by admitting the fruit of that search.



Â Â Â Â Â Â Â Â Â Â Â Â To prevail, Cisneros must also show harm. See Tex. R. App. P. 44.2; Galitz v. State, 617
S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981); Jeffley v. State, 38 S.W.3d 847, 858 (Tex.
App.âHouston [14th Dist.] 2001, pet. ref'd). The harm is obvious, in that the marihuana which
Cisneros is charged with possessing, and which should have been suppressed, is key evidence in the
State's case against her.
Conclusion
Â Â Â Â Â Â Â Â Â Â Â Â Viewing the evidence in the light most favorable to the trial court's ruling, the record shows
Cisneros' consent was effectively coerced by McKinney's misinformation, and there was no probable
cause to search. Because the contraband discovered by the resulting search should have been
suppressed, and failure to do so was harmful, we reverse the judgment and remand this case to the
trial court for further proceedings in accordance with this opinion. See Ford v. State, 158 S.W.3d
488 (Tex. Crim. App. 2005).



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â December 7, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â May 25, 2005

Publish



03, 404(b); see also Montgomery, 810 S.W.2d
at 38990 (describing factors to consider when balancing under Rule 403). 

Â Â Â Â Â Â Â Â Â Â Â  The
exceptions listed in Rule 404(b) are an Âillustrative, not exhaustive, list of
exceptions.ÂÂ  Daggett v. State,
187 S.W.3d 444, 451 n.13 (Tex. Crim. App. 2005).Â  Whether BartonÂs testimony was relevant and
admissible under the Rule 403 balancing test is within the zone of reasonable
disagreement.Â  Therefore, the trial court
did not abuse its discretion in admitting BartonÂs testimony.

Â Â Â Â Â Â Â Â Â Â Â  Even if the
trial court erred in admitting the challenged testimony, the error would be
harmless.Â  Error in admitting evidence
concerning extraneous offenses is reviewed under Rule 44.2(b) of the Texas
Rules of Appellate Procedure. Â Casey,
215 S.W.3d at 885; see Tex. R. App. P. 44.2(b) (an appellate court must disregard a
nonconstitutional error that does not affectÂ a criminal defendantÂs Âsubstantial
rightsÂ). Â A criminal conviction will not
be reversed for nonconstitutional error if the appellate court, after examining
the record as a whole, Âhas fair assurance that the error did not influence the
jury, or had but a slight effect.Â Â Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).Â  The State placed extremely little emphasis on
BartonÂs testimony that he had previously seen Snyder intoxicated.Â  During its closing argument, the State
emphasized BartonÂs observations that Snyder smelled of alcohol.[4]Â  In addition, Trooper BryantÂs testimony
provided ample evidence that Snyder was intoxicated on the occasion in
question.Â  Because BartonÂs testimony,
consisting of approximately one page of the reporterÂs record, was not emphasized
by the State, we have a fair assurance that the challenged testimony did not
influence the jury or had but a slight effect.Â 
We overrule SnyderÂs sole issue.

Â Â Â Â Â Â Â Â Â Â Â  

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  For the
reasons stated, we affirm.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  December
27, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  December
29, 2010

Â 

Do Not Publish











[1]A
jury found Snyder guilty, Snyder pled true to two previous felonies as sentence
enhancements, and the jury assessed punishment at life imprisonment.Â  The trial court sentenced Snyder consistent
with the juryÂs assessment.





[2]Snyder
complains about the trial court not holding a formal hearing.Â  But a trial court Âdoes not have to conduct a
formal hearing or even announce on the record that it has mentally conducted
this balancing test.ÂÂ  Crivello v. State, 4 S.W.3d 792, 797
(Tex. App.ÂTexarkana 1999, no pet.).





[3]Unfair
prejudice does not arise from the mere fact that evidence injures a partyÂs
case. Â Unfair prejudice may result from
the tendency of the evidence to prove some adverse fact not properly in issue
or unfairly to excite emotions against the defendant.Â  Casey
v. State, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007).





[4]Barton
testified he and his girlfriend arrived at SnyderÂs house while the state
trooper was still present.Â  Barton
admitted he smelled alcohol on Snyder.Â