COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-109-CR

                                                 NO.
2-09-110-CR

 

 

THE STATE OF TEXAS                                                                             STATE

 

                                                             V.

 

EARNEST LYNN ROSS                                                                        APPELLEE

 

                                                       ------------

 

               FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                     MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction

In a
single issue, the State seeks reversal of the trial court=s order
partially granting Earnest Lynn Ross=s motion
to suppress evidence.  Specifically,
despite holding evidence found in Ross=s
vehicleCincluding
evidence found in the vehicle=s trunkCadmissible,
the trial court ordered that evidence located in a locked suitcase found in the
trunk be suppressed.  We reverse the portion
of the trial court=s order suppressing the evidence
found in the locked suitcase and remand the case to the trial court.

II.  Factual Background

A Denton
County Sheriff=s deputy arrested Ross on June
16, 2008, during an arranged, preemptive takedown of would-be home invaders at
a Wal‑Mart parking lot in Denton County, Texas.  Through the services of a confidential
informant, officers learned that Ross and co‑conspirators intended to
carry out a series of home invasions. 
Lieutenant William Scott, with the cooperation of the Dallas Police
Department, arranged for the informant to record conversations on three
separate occasions between Ross and others concerning their designs to complete
these crimes.  While the recordings took
place, officers conducted surveillance, noting Ross=s
involvement in the conversations and ascertaining what type of vehicle he
drove.

During
their investigation of these inchoate crimes, officers learned that Ross had
outstanding warrants for his arrest for aggravated robbery and the attempted
murder of a Duncanville, Texas, police officer. 
Officers also learned that Ross had potentially been involved in
previous home invasions.  According to police,
Ross routinely used pliers and lighter fluid as instruments of torture in order
to coerce victims Ainto giving . . .
information that was being sought.@  Through the recordings provided by the
informant, officers learned of one upcoming home invasion that would require a
truck with a hydraulic lift Abecause of
a very heavy safe that was the target@ of the
robbery.  Scott arranged to meet the
informant and provide a truck with a hydraulic lift at the Wal-Mart where the
eventual arrest was made.  Scott learned
that Ross, the informant, and the co‑conspirators were to meet at the
Wal-Mart, obtain the truck, and then leave to commit the home invasion.  The officers=
investigation revealed that Ross and his accomplices would have a number of
instrumentalities on them designed to aid them in their scheme, including:  an SKS assault rifle, handguns, police
officers=
uniforms to be used as disguises, flex cuffs (large wire ties that are used as
temporary handcuffs), lighter fluid, pliers, a tracking device used by Ross to
track potential victims, and possibly explosives to be used to open the safe.

At
approximately 8:00 p.m. on June 16, 2008, officers executed a vehicle assault
on both Ross=s vehicle and the informant=s
vehicle, and placed four individuals under arrestCRoss,
his two co‑conspirators, and the informant, who was later released.  When the officers arrested Ross, he was
wearing a bodysuit and a bulletproof vest underneath his shirt and pants, but
the bulletproof vest was without its ballistic panels.  After arresting Ross and without a warrant,
the officers searched Ross=s
vehicle.  Inside the interior of Ross=s
vehicle, officers found a handgun, a black holster, and a black Yukon night
vision bagCa bag consistent with night
vision goggles officers believed Ross used during home invasions.  Officers then opened the trunk.  There the officers found several suitcases,
one of which was locked.  The officers
also found a black bag containing handguns, ammunition, pliers, and other
personal effects.  Also in the trunk, the
officers found other personal effects, rubber gloves, a tracking device, and a
black hard case containing tools. 
Officers then removed Ross=s keys
from the ignition, and on the key ring they found a key that opened the locked
suitcase.  Inside the suitcase, officers
found two-way radios, batteries, a charger, keys, zip-ties (flex cuffs), two ASWAT@ vests,
lighter fluid, a black lighter, a handgun and gun belt, a crowbar, ammunition,
a listening device, black gloves, another pair of pliers, and a bag containing
an SKS assault rifle with a folding stock and magazine of ammunition.

The
State brought charges against Ross, including engaging in organized criminal
activity and the unlawful possession of a firearm by a felon.  Ross filed a motion to suppress all evidence
found in his vehicle.  The trial court
ruled that all the evidence found during the search was lawfully obtained
except for the evidence found in the locked suitcase.  The State now appeals the trial court=s order
suppressing the evidence found in the locked suitcase.

 








III.  Standard of Review on Motion to Suppress

We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor; and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo. 
Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.  When the trial court dictates its findings of
fact and conclusions of law into the record, they are treated the same as
written findings of fact and conclusions of law.  State v. Bryant, 161 S.W.3d 758, 761
(Tex. App.CFort Worth 2005, no pet.).

We must
uphold the trial court=s ruling if it is supported by
the record and correct under any theory of law applicable to the case even if
the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

 








IV.  Automobile Exception to Warrant Requirement

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede, 214 S.W.3d at 24.  To
suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672.  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 672B73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether
a search is reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004).  Reasonableness
is measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right
to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless
it falls within one of the Aspecifically
defined and well-established@
exceptions to the warrant requirement.  McGee
v. State, 105 S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540
U.S. 1004 (2003); see Best, 118 S.W.3d at 862.

One such
exception holds that the police may lawfully search an automobile if they have
probable cause to believe that the vehicle contains evidence of a crime.  Neal v. State, 256 S.W.3d 264, 282
(Tex. Crim. App. 2008) (citing Wiede, 214 S.W.3d at 24).  Probable cause to search exists when there is
a Afair
probability@ of finding inculpatory evidence
at the location being searched.  Wiede,
214 S.W.3d at 24 n.29 (citing Illinois v. Gates, 462 U.S. 213, 238, 103
S. Ct. 2317, 2332 (1983)).  Probable
cause also exists when officers have reasonably trustworthy information
sufficient to warrant a reasonable belief that an offense has been or is being
committed.  McGee, 105 S.W.3d 609
at 614.  In determining whether there was
sufficient probable cause, this court must consider the sum of the information
known to the officers at the time of a search. 
Fineron v. State, 201 S.W.3d 361, 366B67 (Tex.
App.CEl Paso
2006, no pet.).

When
this so-called Aautomobile exception@
applies, then the police may search Aevery
part of the vehicle and its contents that may conceal the object of the search.@  United States v. Ross, 456 U.S. 798,
825, 102 S. Ct. 2157, 2173 (1982).  This
permits officers to search every part of the vehicle and its contents that may
conceal the object of the search that forms the basis of probable cause,
including any containers or packages found inside the car, without
qualification as to ownership.  California
v. Acevedo, 500 U.S. 565, 571, 111 S. Ct. 1982, 1986 (1991); Wyoming v.
Houghton, 526 U.S. 295, 299, 119 S. Ct. 1297, 1300 (1999).

The
scope of a warrantless search of an automobile is not defined by the nature of
the container in which the contraband is secreted.  Acevedo, 500 U.S. at 579, 111 S. Ct.
at 1991.  Rather, it is defined by the
object of the search and the places in which there is probable cause to believe
that it may be found.  Id. at 579B80, 111
S. Ct. at 1991.  Under this exception,
officers may conduct a search of the vehicle that is as thorough as a
magistrate could authorize in a warrant particularly describing the place to be
searched.  Id. at 570, 111 S. Ct.
at 1986.  For example, probable cause to
believe that a container placed in the trunk of a taxi contains contraband or
evidence does not justify a search of the entire cab.  Id. at 571, 111 S. Ct. at 1987.  But it does justify a search of the
container.  Id. at 574, 111 S. Ct.
at 1988 (citing Ross at 821, 102 S. Ct. at 2171 n.28).

In
addition to the ready mobility of an automobile, the automobile exception is
justified because the expectation of privacy with respect to one=s
automobile is significantly less than that relating to one=s home
or office.  Keehn v. State, 279 S.W.3d
330, 335 (2009) (citing California v. Carney, 471 U.S. 386, 393, 105 S.
Ct. 2066, 2081 (1985)).

For
example, in Keehn, while investigating a theft and without a warrant,
police seized a tank from a minivan parked in Keehn=s
driveway.  Keehn, 279 S.W.3d at
331.  Days before the seizure, the victim
of the theft reported seeing a male and female run to the back of a nearby
house.  Id. at 332.  A few minutes later, a minivan left the
house.  Id.  The victim tried to stop the van but was
unsuccessful.  A police officer went to
the nearby house several times looking for the van, but it was not there.  Id. 
Days later, the officer spotted the van parked in the house=s
driveway and decided to talk to the residents about the theft.  As he walked up the driveway to the front
door, the officer looked into the van=s
passenger‑side windows.  The
officer saw a five‑gallon propane tank in the back of the van and noticed
that the Acutting of the tank@ had a
bluish‑greenish discoloration.  Id.  Based on his experience, the officer
concluded that the tank contained anhydrous ammonia, which is used to
manufacture methamphetamine.  Id.  He proceeded to the house and knocked on the
door.  He heard Aa bunch
of rustling around . . . inside of the residence.@  After knocking for Asome
time,@ he
returned to his vehicle and called for assistance.  Id. 
And, because of the propane tank, he requested the additional assistance
of drug task force officers.  Id.

After assistance
arrived, the officer went back to the house and knocked again.  Id. 
Keehn answered, and the officer told him that he was investigating the
theft.  Multiple officers entered the
house and questioned Keehn about the theft. 
Id.  After speaking with
Keehn, one of the task force officers, who had been trained regarding the
investigation and production of methamphetamine, went to the van and looked in
the windows.  Id.  The task force officer saw the propane tank
in the van and noticed that the valve was discolored and looked like it had
been modified in some way.  Based on his
training and experience, the task force officer also believed that the tank
contained anhydrous ammonia.  Id.  The task force officer entered the van,
seized the tank, and tested the tank for ammonia.  The test yielded a positive result, and the
officer arrested Keehn.  Keehn did not
give the officers permission to enter the van to seize the tank.  Id.

The
court of criminal appeals held that the automobile exception gave the officers
the right to enter the van and seize the propane tank because the van was
readily mobile, subject to A
pervasive [government] regulation,@ and
based on their training and investigative experience concerning the production
of methamphetamine, the officers had probable cause to believe that the tank
contained anhydrous ammonia.  Id.
at 335 (citing Carney, 471 U.S. at 391B92, 105
S. Ct. at 2066).

V.  The Officers were Justified in Searching the
Locked Suitcase

The
record from the motion to suppress hearing indicates that the officers in this
case had reasonably trustworthy information that led them to believe that Ross=s
vehicle contained evidence of the crime he was about to commit.  Lieutenant Scott testified that on three
occasions the confidential informant recorded conversations with Ross and other
co‑conspirators about the planned home invasion.  Prior to the arrest, Scott and the informant
met at the Wal‑MartCa location where the officers
had information, from the informant and recordings, that led them to believe
would be a meeting point en route to the home invasion involving the
safe.  Officers had supplied the
informant with a hydraulic-lift truck to be picked up at the Wal-Mart.  Officers knew that Ross and his co‑conspirators
planned to use the truck to retrieve a safe during the planned home
invasion.  The officers verified Ross=s
vehicle, having observed Ross drive it multiple times during their
investigation.  The officers then
observed Ross arrive in his vehicle to pick up the truck, as well as other
known co‑conspirators, at the Wal-Mart at the time the informant and
recordings had revealed.  In fact, the
trial court specifically found that the confidential informant was reliable,
that the officers knew with particularity the place where Ross and his co‑conspirators
would meet, and that the officers knew of the planned home invasion.

In
addition, the officers had information that instrumentalities of the home
invasion would be found on or near Ross. 
The trial court specifically found that the officers correctly believed
that Aguns
[and] possibly explosives@ would be found during the
arrest.  The officers clearly expected to
find an SKS assault rifle.  Officers had
also testified that they expected to find lighter fluid, which was known to be
used by Ross during home invasions to torture victims into giving
information.  The officers were also
looking for pliers, another of Ross=s known
torturing instruments.  In addition,
officers knew that Ross and his co‑conspirators intended to disguise
themselves as police officers during the home invasion; thus, the officers
expected to find any number of itemsCpolice
vests, police shirts, or sheriff=s
gear.  Given the totality of the
circumstances, the trial court found that the officers had probable cause to
search Ross=s vehicle, including the trunk.

But the
trial court specifically held that the officers illegally searched the locked
suitcase found in Ross=s trunk.  Apparently, the trial court believed that if
the officers Areally believed that there might
be a bomb [in the locked suitcase], then prudence would dictate that@ they
call the Abomb squad.@  But prudence is not the standard for the
exception applicable to an automobile search of this type.  The standard is probable cause.[2]  The officers had probable cause to believe
that any of the evidence described at the motion to suppress hearing, verified
by the informant and the audio recordings, could have been found in the locked
suitcase; thus, under the automobile exception, the officers were justified in
conducting a warrantless search of Ross=s
vehicleCincluding
the locked suitcase.  See Blaylock v.
State, 125 S.W.3d 702, 704B05 (Tex.
App.CTexarkana
2003, pet. ref=d) (holding that officers had
probable cause to detain defendant and search his vehicle under automobile
exception to warrant requirement when informant arranged meeting with defendant
for the sale of cocaine, informant accurately described defendant=s
vehicle, and informant accurately predicted location and time of arranged
meeting); see also Neal, 256 S.W.3d at 282 (holding that when the
automobile exception applies, officers may search Aevery
part of the vehicle and its contents that may conceal the object of the search.@).  Given that Ross=s
vehicle is subject to regulation, is readily mobile, and the officers had
probable cause to believe that it contained evidence of a crime, we hold that
the trial court erred by suppressing evidence found in the locked suitcase and
sustain the State=s sole issue.  See Keehn, 279 S.W.3d at 335.

VI.  Conclusion

Having
sustained the State=s sole issue, we reverse the
trial court=s order suppressing the evidence
found in the locked suitcase and remand the case to the trial court for further
proceedings.  See Tex. R. App. P.
43.2(d).

 

 

PER CURIAM

 

PANEL:  MEIER, LIVINGSTON, and
MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 7, 2010











[1]See Tex. R. App. P. 47.4.





[2]Both the State and Ross spent
a portion of their briefs explaining whether exigent circumstances existed to
justify the officers= search of Ross=s vehicle.  But, in accordance with the United States
Supreme Court=s jurisprudence
concerning the automobile exception, the court of criminal appeals has held
that exigency is not a requirement to the automobile exception.  See State v. Guzman, 959 S.W.2d
631, 633B34 (Tex. Crim. App. 1998)
(A[A] vehicle lawfully in
police custody may be searched on the basis of probable cause to believe that
it contains contraband, and there is no requirement of exigent circumstances
to justify such a warrantless search.@) (quoting United States v. Johns, 469
U.S. 478, 484, 105 S. Ct. 881, 885 (1985)). 
In the instant case, the police had reliable information leading them to
believe that explosives would be found in the vehicle.