# NO. 12-09-00303-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CASEY C. MOSLEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Casey Mosley appeals his conviction for possession of less than one gram of cocaine, for which he was sentenced to imprisonment for twelve years. Specifically, Appellant challenges the trial court's order denying his motion to suppress. In two issues, Appellant contends that (1) reasonable suspicion did not exist to detain him and (2) his vehicle was unlawfully searched. We affirm.

#### BACKGROUND

On September 26, 2008, Texas Department of Public Safety Trooper Michael Bortz stopped a vehicle around 12:30 a.m. on Loop 323 North in Tyler, Texas. Appellant was the driver of the vehicle. After cocaine was discovered during a search of his vehicle, Appellant was charged with possession of less than one gram of cocaine. Appellant filed a motion to suppress, alleging the stop was unlawful and the subsequent search was illegal.

At the suppression hearing, Trooper Bortz was the State's only witness. Bortz testified that before the stop, he observed Appellant's vehicle weaving "a couple of times" while traveling

on the inside lane on Loop 323, a highway with two lanes of travel on each side.[1] Bortz stated that the first weave was "outside of his lane," that Appellant "initially went towards the right and then came back to the left," and that the tires crossed the center stripe[2] by "[m]aybe a foot or two. I really don't recall." Bortz also stated that he saw more weaving in the lane before Appellant changed lanes to make a right turn. However, he did not recall what lane Appellant was in or whether he crossed the center stripe or the fog line the second time. When asked if this weaving was inside the lane or if the tires touched the stripe again, Bortz responded, "I don't recall how far over he went the second time."

Trooper Bortz testified that Appellant was not driving in an unsafe manner "[b]esides for the fact that he's unable to maintain the lane . . . ." He testified that there was not any traffic around, beside, or behind Appellant during either instance of weaving. He also admitted that "[t]here was no other vehicle for him to have an accident with" but stated that "he could have had one." According to Trooper Bortz, Appellant did nothing wrong when he changed lanes to make a right turn. But he answered in the affirmative when he was asked if he would consider "swerving back and forth" as "unsafe for the driver."

Based on these observations and conclusions, Trooper Bortz initiated the stop of Appellant's vehicle for failing to "maintain a single lane."[3] He testified that he also wanted to see if the driver was intoxicated because when a vehicle crosses a middle line, his initial concern is that the driver may be intoxicated.[4]

Trooper Bortz approached the driver's side of the vehicle after the stop and smelled alcohol coming from the vehicle. He asked Appellant to exit the vehicle and smelled alcohol on Appellant as well. Trooper Bortz then asked Appellant if there was anything illegal inside the vehicle, and Appellant replied that there was not. Bortz testified that he suspected there might have been an open container or some other form of alcohol inside the vehicle. Appellant told

---

[1] The State also offered a videotape into evidence that was made by the officer's in-car video camera. On the video, Officer Bortz told Appellant that he stopped him because he was "all over the roadway."

[2] Bortz clarified later that by "center stripe," he meant the lane dividing line that separated traffic traveling in the same direction.

[3] An operator on a roadway divided into two or more clearly marked lanes for traffic (1) shall drive as nearly as practical entirely within a single lane and (2) may not move from the lane unless that movement can be made safely. TEX. TRANSP. CODE ANN § 545.060(a) (Vernon 1999).

Trooper Bortz that he had about two beers earlier that night. When running a routine check on Appellant's driver's license, Trooper Bortz found that Appellant had an active warrant out of Smith County for possession of marijuana, a prior DWI conviction, and numerous drug related charges. During his initial search of Appellant, Trooper Bortz found approximately $800 in Appellant's back pocket. Trooper Bortz administered a horizontal gaze nystagmus (HGN) test to Appellant and determined he was not intoxicated. He then took Appellant into custody and placed him in the patrol car.

Two female passengers were also with Appellant. When Trooper Bortz approached the vehicle and spoke with the two passengers, he noticed a slight smell of marijuana coming from the vehicle. Because he smelled marijuana, Trooper Bortz asked the female passengers if they had been smoking anything. The two females were acting "extremely more nervous than normal." One of the female passengers gave Trooper Bortz a false name. After learning her true identity, Trooper Bortz found that this passenger had an active warrant as well. After confirming the warrant, Trooper Bortz placed the female passenger under arrest.

Instead of impounding the vehicle, Trooper Bortz allowed Appellant to call an acquaintance to pick up the vehicle. Because of the odors coming from the vehicle, Trooper Bortz asked several times if there was anything illegal in the vehicle. He was also concerned about retaining evidence of open containers or marijuana, and his safety, because an unknown individual was coming to pick up the vehicle. Consequently, Trooper Bortz searched the vehicle. During the search, Trooper Bortz found a "baggy from—like a Wal-Mart bag or something like that hanging out of the visor on the driver's side." Based on his training and experience, Trooper Bortz testified that this type of bag is something that could hold contraband and that the location of the bag was "out of the ordinary." Once Bortz pulled out the bag, he noticed that it had something in it that was making a round shape toward the bottom. Based on his training and experience, Trooper Bortz testified that the object could be drugs. He testified further that, at the time he was looking in the bag, he was not looking for an open container of alcohol or weapons. When he opened the bag, he discovered the object making the round shape was crack cocaine.

The trial court denied Appellant's motion to suppress, and Appellant filed a notice of

---

[4] Bortz also testified that he stopped Appellant based on concern for his welfare. The State does not argue, nor do we address, the community caretaking function as a basis for the stop.

appeal.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds*, *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's determination of (1) historical facts, especially when those fact findings are based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). We review de novo all application of law to fact questions that do not turn on the credibility and demeanor of the witnesses. *See Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

In reviewing the trial court's ruling on a motion to suppress, we must first view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Here, the record is silent on the reasons for the trial court's ruling, there are no explicit fact findings, and neither party timely requested findings and conclusions from the trial court. Therefore, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *See Kelly*, 204 S.W.3d at 818-19; *Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We review the trial court's legal rulings de novo unless its implied fact findings that are supported by the record are also dispositive of the legal rulings. *Kelly*, 204 S.W. 3d at 819. An appellate court will sustain the trial court's decision if it concludes the decision is correct on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d at 855-56.

In his first issue, Appellant contends that the trial court erred by refusing to suppress the evidence obtained as a result of the stop because Officer Bortz did not have reasonable suspicion to detain Appellant. More specifically, Appellant argues that (1) weaving alone does not provide reasonable suspicion of driving while intoxicated and (2) he did not violate the Texas Transportation Code.

**Reasonable Suspicion**

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd). Because an investigative detention is a seizure that implicates the United States and Texas constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). A temporary detention is lawful if an officer has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Reasonable suspicion requires some minimal level of objective justification for making a stop, which is more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion needed for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989); *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). The reasonable suspicion determination disregards any subjective intent of the officer and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. Importantly, we must examine the reasonableness of the temporary detention in terms of the totality of the circumstances. *Foster*, 326 S.W. 3d at 613; *Curtis v. State*, 238 S.W.3d 376, 379-80 (Tex. Crim. App. 2007); *Ford*, 158 S.W.3d at 492-93. When an officer conducts a warrantless search, the state has the burden at the suppression hearing to show that the officer had reasonable suspicion to believe the driver was violating the law.[5] *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

**Reasonable Suspicion of Intoxication**

Trooper Bortz testified that he stopped Appellant, in part, because he thought Appellant

---

[5] The State stipulated in this case that there was not a warrant.

might be intoxicated.  A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place.  TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003).  "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.  *Id*. § 49.01(2)(A) (Vernon 2003).

Weaving alone may furnish a sufficient basis for reasonable suspicion of intoxication even absent evidence of a traffic violation.  *See State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref'd) (opining that weaving in one's own lane can justify investigatory stop when that weaving is erratic, unsafe, or tends to indicate intoxication); *see also Walker v. State*, No. 02-04-00336-CR, 2006 Tex. App. LEXIS 1328, at *13-14 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (reasonable suspicion of driving while intoxicated where vehicle crossed shoulder line once and then crossed the center yellow lines and continued to weave within lane);  *State v. Arend*, No. 02-03-00336-CR, 2005 Tex. App. LEXIS 3289, at *13-14  (Tex. App.—Fort Worth Apr. 28, 2005, pet. ref'd) (mem. op., not designated for publication) (reasonable suspicion of driving while intoxicated where vehicle weaved within single lane and continued weaving as officer followed for forty-five to fifty seconds); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet ref'd) (reasonable suspicion that appellant was intoxicated where vehicle traveling in left passing lane at slow speed with no other cars in vicinity crossed left lane stripe twice).

Further, the time of day and location are relevant factors in determining reasonable suspicion of intoxication.  *See Foster*, 326 S.W. 3d at 613; *see, e.g.*, *Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (reasonable suspicion to justify investigation of intoxication where vehicle weaved three times out of lane over short distance around 1:00 a.m.); *Kessler v. State*, No. 02-08-270-CR, 2010 Tex. App. LEXIS 2139, at *3 (Tex. App.—Fort Worth Mar. 25, 2010, pet ref'd) (mem. op. on reh'g, not designated for publication) (reasonable suspicion of driving while intoxicated where vehicle was close to numerous locations selling alcoholic beverages at 2:00 a.m., moved abruptly to the left to narrowly miss a curb, and then did not drive in a single lane); *Cook v. State*, 63 S.W.3d 924, 928-29 (Tex. App. —Houston [14th Dist.] 2002, pet. ref'd) (reasonable suspicion of driving while intoxicated where vehicle "constantly" crossed broken white line into adjacent lane; officer also observed driver leaving bar "at a considerable

rate of speed, pulling into a gas station and leaving within 10-15 seconds, and driving 'all over the roadway' of an unmarked road" before turning onto roadway where weaving took place).

## Application of Law to Facts

In this case, Trooper Bortz testified that he observed Appellant's vehicle weave once across the lane dividing line and weave again across either the lane dividing line or the fog line. This occurred around 12:30 a.m. on Loop 323 in Tyler, which is a major roadway. The State also offered a videotape into evidence that was made by the officer's in-car video camera. Trooper Bortz told Appellant on the video that he stopped him because Appellant was "all over the roadway." Various comments on the video indicated that Appellant had recently left a bar. And finally, Trooper Bortz testified further that weaving, particularly across the middle line, led him to believe the driver might be intoxicated or impaired. Based on the totality of the circumstances, including the time of night, the location, and Appellant's weaving, and the rational inferences to be drawn from those facts, Appellant's driving was sufficient to raise a reasonable suspicion of driving while intoxicated in the mind of a reasonable police officer. *See Foster*, 326 S.W.3d at 614. Therefore, we hold that Trooper Bortz's initial stop of Appellant was lawful. Accordingly, we overrule Appellant's first issue.

Because we conclude that reasonable suspicion existed that Appellant was driving while intoxicated, we need not address Appellant's argument that Trooper Bortz did not have reasonable suspicion to believe Appellant had committed traffic a code violation. *See* TEX. R. APP. 47.1.

## LEGALITY OF THE SEARCH

In his second issue, Appellant contends that the trial court erred in finding that Appellant's vehicle was lawfully searched.

## Probable Cause

Under the automobile exception to the warrant requirement, an officer may conduct a warrantless search of an automobile if the officer has probable cause to believe the vehicle contains evidence of a crime. *See Powell v. State*, 898 S.W.2d 821, 827-28 (Tex. Crim. App. 1994). If the automobile exception authorizes an officer's search, the officer is permitted to search every part of the vehicle, as well as any contents therein, that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173, 72 L. Ed. 2d 572

(1982); ***Blaylock v. State***, 125 S.W.3d 702, 705 (Tex. App.—Texarkana 2003, pet. ref'd). In determining probable cause, courts must consider the totality of the circumstances. ***Angulo v. State***, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable cause requires more than mere suspicion, it requires far less evidence than is needed to support a conviction or even a finding by a preponderance of the evidence. ***Middleton v. State***, 125 S.W.3d 450, 457 (Tex. Crim. App. 2003). Instead, probable cause exists where officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. ***McGee v. State***, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). The odor of marijuana alone provides sufficient probable cause for an officer to believe marijuana is concealed in the vehicle. ***Gant v. State***, 116 S.W.3d 124, 135 (Tex. App.—Tyler 2003, pet. ref'd).

The record in this case shows that Trooper Bortz noticed the smell of both alcohol and marijuana coming from the vehicle. Further, Appellant told Bortz that he drank about two beers earlier that evening. When running a routine check on Appellant's driver's license, Bortz found that Appellant had an active warrant out of Smith County for possession of marijuana, a prior DWI conviction, and numerous drug related charges. During the initial search of Appellant, Trooper Bortz found approximately $800 in Appellant's back pocket. Trooper Bortz testified that Appellant's carrying such "a large sum of money" not contained in a wallet was not normal. One of the female passengers gave Trooper Bortz a false name. After learning her true identity, Trooper Bortz found that this passenger had an active warrant as well. The two females were also acting "extremely more nervous than normal." Trooper Bortz testified that, because he smelled alcohol and marijuana, he suspected an open container of alcohol or marijuana was inside the vehicle.

The odor of marijuana alone coming from Appellant's vehicle provided Trooper Bortz sufficient probable cause to believe marijuana was concealed in the vehicle. *See **Gant***, 116 S.W.3d at 135. During the search, Trooper Bortz located a rock of cocaine in a plastic bag in the visor above the front passenger seat. Based on his training and experience, Trooper Bortz testified that this type of bag is something that could hold contraband and that the location of the bag was "out of the ordinary." Since Trooper Bortz had probable cause to believe that Appellant's vehicle contained contraband, the automobile exception applied. Consequently, Trooper Bortz could search every part of the vehicle and any contents that might conceal the

suspected contraband, including the plastic bag that was ultimately determined to contain cocaine. *See Ross,* 456 U.S. at 825; *Blaylock*, 125 S.W.3d at 705. Trooper Bortz's search of Appellant's vehicle was lawful. Therefore, Appellant's second issue is overruled.

## DISPOSITION

We *affirm* the trial court's order denying Appellant's motion to suppress.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 20, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)