MARY'S OPINION HEADING 








NO. 12-09-00303-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

CASEY C. MOSLEY,                                                §                      APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                          


MEMORANDUM
OPINION

            Casey
Mosley appeals his conviction for possession of less than one gram of cocaine,
for which he was sentenced to imprisonment for twelve years.  Specifically,
Appellant challenges the trial court’s order denying his motion to suppress.  In
two issues, Appellant contends that (1) reasonable suspicion did not exist to
detain him and (2) his vehicle was unlawfully searched.  We affirm.

 

Background

            On
September 26, 2008, Texas Department of Public Safety Trooper Michael Bortz
stopped a vehicle around 12:30 a.m. on Loop 323 North in Tyler, Texas.  Appellant
was the driver of the vehicle.  After cocaine was discovered during a search of
his vehicle, Appellant was charged with possession of less than one gram of
cocaine.  Appellant filed a motion to suppress, alleging the stop was unlawful
and the subsequent search was illegal.  

            At
the suppression hearing, Trooper Bortz was the State’s only witness. Bortz
testified that before the stop, he observed Appellant’s vehicle weaving “a
couple of times” while traveling on the inside lane on Loop 323, a highway with
two lanes of travel on each side.[1]  Bortz stated
that the first weave was “outside of his lane,” that Appellant “initially went
towards the right and then came back to the left,” and that the tires crossed
the center stripe[2] by “[m]aybe a foot or two. I really
don’t recall.”  Bortz also stated that he saw more weaving in the lane before
Appellant changed lanes to make a right turn.  However, he did not recall what
lane Appellant was in or whether he crossed the center stripe or the fog line
the second time.  When asked if this weaving was inside the lane or if the
tires touched the stripe again, Bortz responded, “I don’t recall how far over
he went the second time.” 

            Trooper
Bortz testified that Appellant was not driving in an unsafe manner “[b]esides
for the fact that he’s unable to maintain the lane . . . .”  He testified that
there was not any traffic around, beside, or behind Appellant during either
instance of weaving.  He also admitted that “[t]here was no other vehicle for
him to have an accident with” but stated that “he could have had one.”  According
to Trooper Bortz, Appellant did nothing wrong when he changed lanes to make a right
turn.  But he answered in the affirmative when he was asked if he would
consider “swerving back and forth” as “unsafe for the driver.” 

            Based
on these observations and conclusions, Trooper Bortz initiated the stop of
Appellant’s vehicle for failing to “maintain a single lane.”[3]
He testified that he also wanted to see if the driver was intoxicated because
when a vehicle crosses a middle line, his initial concern is that the driver
may be intoxicated.[4]

            Trooper
Bortz approached the driver’s side of the vehicle after the stop and smelled
alcohol coming from the vehicle.  He asked Appellant to exit the vehicle and
smelled alcohol on Appellant as well.  Trooper Bortz then asked Appellant if
there was anything illegal inside the vehicle, and Appellant replied that there
was not.  Bortz testified that he suspected there might have been an open
container or some other form of alcohol inside the vehicle.  Appellant told
Trooper Bortz that he had about two beers earlier that night.  When running a routine
check on Appellant’s driver’s license, Trooper Bortz found that Appellant had
an active warrant out of Smith County for possession of marijuana, a prior DWI
conviction, and numerous drug related charges.  During his initial search of
Appellant, Trooper Bortz found approximately $800 in Appellant’s back pocket. 
Trooper Bortz administered a horizontal gaze nystagmus (HGN) test to Appellant
and determined he was not intoxicated.  He then took Appellant into custody and
placed him in the patrol car.  

            Two
female passengers were also with Appellant.  When Trooper Bortz approached the
vehicle and spoke with the two passengers, he noticed a slight smell of
marijuana coming from the vehicle.  Because he smelled marijuana, Trooper Bortz
asked the female passengers if they had been smoking anything.  The two females
were acting “extremely more nervous than normal.”  One of the female passengers
gave Trooper Bortz a false name.  After learning her true identity, Trooper
Bortz found that this passenger had an active warrant as well.   After
confirming the warrant, Trooper Bortz placed the female passenger under arrest.

            Instead
of impounding the vehicle, Trooper Bortz allowed Appellant to call an
acquaintance to pick up the vehicle.  Because of the odors coming from the
vehicle, Trooper Bortz asked several times if there was anything illegal in the
vehicle.  He was also concerned about retaining evidence of open containers or
marijuana, and his safety, because an unknown individual was coming to pick up
the vehicle.  Consequently, Trooper Bortz searched the vehicle. During the
search, Trooper Bortz found a “baggy from—like a Wal-Mart bag or something like
that hanging out of the visor on the driver’s side.”  Based on his training and
experience, Trooper Bortz testified that this type of bag is something that
could hold contraband and that the location of the bag was “out of the
ordinary.”  Once Bortz pulled out the bag, he noticed that it had something in
it that was making a round shape toward the bottom.  Based on his training and
experience, Trooper Bortz testified that the object could be drugs.  He
testified further that, at the time he was looking in the bag, he was not
looking for an open container of alcohol or weapons. When he opened the bag, he
discovered the object making the round shape was crack cocaine. 

            The
trial court denied Appellant’s motion to suppress, and Appellant filed a notice
of appeal.

 

 

Standard of Review

            We
review a trial court’s ruling on a motion to suppress under a bifurcated
standard of review.  Hubert v. State, 312 S.W.3d
554, 559 (Tex. Crim. App. 2010); Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000).  The trial judge is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given
their testimony.  Wiede v. State, 214 S.W.3d 17, 24-25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds, State v. Cullen,
195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total
deference to the trial court's determination of (1) historical facts,
especially when those fact findings are based on an evaluation of credibility
and demeanor, and (2) application of law to fact questions that turn on an
evaluation of credibility and demeanor. Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Montanez v. State, 195
S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v. State, 68
S.W.3d 644, 652-53 (Tex. Crim. App. 2002).  We review de novo all application
of law to fact questions that do not turn on the credibility and demeanor of
the witnesses.  See Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652-53.

            In
reviewing the trial court’s ruling on a motion to suppress, we must first view
the evidence in the light most favorable to the trial court's ruling.  State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  Here, the record
is silent on the reasons for the trial court's ruling, there are no explicit
fact findings, and neither party timely requested findings and conclusions from
the trial court.  Therefore, we imply the necessary fact findings that would
support the trial court's ruling if the evidence, viewed in the light most
favorable to the trial court's ruling, supports those findings.  See Kelly,
204 S.W.3d at 818-19; Amador, 221 S.W.3d at 673; Wiede,
214 S.W.3d at 25.  We review the trial court’s legal rulings de novo unless
its implied fact findings that are supported by the record are also dispositive
of the legal rulings.  Kelly, 204 S.W. 3d at 819.  An
appellate court will sustain the trial court’s decision if it concludes the
decision is correct on any theory of law applicable to the case.  State
v. Ross, 32 S.W.3d at 855-56.

 

Legality of the Stop

            In
his first issue, Appellant contends that the trial court erred by refusing to
suppress the evidence obtained as a result of the stop because Officer Bortz did
not have reasonable suspicion to detain Appellant.  More specifically,
Appellant argues that (1) weaving alone does not provide reasonable suspicion
of driving while intoxicated and (2) he did not violate the Texas
Transportation Code.

Reasonable
Suspicion

            A
routine traffic stop closely resembles an investigative detention.  Powell
v. State, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet.
ref’d).  Because an investigative detention is a seizure that implicates
the United States and Texas constitutions, the traffic stop must be
reasonable.  U.S. Const.
amend. IV; Tex. Const. art. I, §
9; Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App.
1996).  A temporary detention is lawful if an officer has reasonable suspicion
to believe that an individual is violating the law.  Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists if the
officer has specific, articulable facts that, when combined with rational
inferences from those facts, would lead him to reasonably conclude that a
particular person actually is, has been, or soon will be engaged in criminal
activity.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001).  Reasonable suspicion requires some minimal level of objective
justification for making a stop, which is more than an inchoate and
unparticularized suspicion or hunch, but less than the level of suspicion
needed for probable cause.  United States v. Sokolow, 490 U.S. 1,
7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989); Foster v. State,
326 S.W.3d 609, 613 (Tex. Crim. App. 2010).  The reasonable suspicion
determination disregards any subjective intent of the officer and looks solely
to whether an objective basis for the stop exists.  Ford, 158
S.W.3d at 492.  Importantly, we must examine the reasonableness of the
temporary detention in terms of the totality of the circumstances.  Foster,
326 S.W. 3d at 613; Curtis v. State, 238 S.W.3d 376, 379-80 (Tex.
Crim. App. 2007); Ford, 158 S.W.3d at 492-93.  When an officer
conducts a warrantless search, the state has the burden at the suppression
hearing to show that the officer had reasonable suspicion to believe the driver
was violating the law.[5]  Castro
v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). 

Reasonable
Suspicion of Intoxication

            Trooper
Bortz testified that he stopped Appellant, in part, because he thought
Appellant might be intoxicated.  A person commits the offense of driving while
intoxicated if the person is intoxicated while operating a motor vehicle in a
public place.  Tex. Penal Code Ann.
§ 49.04(a) (Vernon 2003).  “Intoxicated” means not having the normal use of
mental or physical faculties by reason of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, a combination of two or more of
those substances, or any other substance into the body.  Id. § 49.01(2)(A) (Vernon 2003). 

            Weaving
alone may furnish a sufficient basis for reasonable suspicion of intoxication
even absent evidence of a traffic violation.  See State v. Tarvin,
972 S.W.2d 910, 912 (Tex. App.—Waco 1998, pet. ref’d) (opining that weaving in
one’s own lane can justify investigatory stop when that weaving is erratic,
unsafe, or tends to indicate intoxication); see also Walker v. State,
No. 02-04-00336-CR, 2006 Tex. App. LEXIS 1328, at *13-14 (Tex. App.—Fort Worth
Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (reasonable
suspicion of driving while intoxicated where vehicle crossed shoulder line once
and then crossed the center yellow lines and continued to weave within lane);  State
v. Arend, No. 02-03-00336-CR, 2005 Tex. App. LEXIS 3289, at *13-14 
(Tex. App.—Fort Worth Apr. 28, 2005, pet. ref’d) (mem. op., not designated for
publication) (reasonable suspicion of driving while intoxicated where vehicle
weaved within single lane and continued weaving as officer followed for
forty-five to fifty seconds); McQuarters v. State, 58 S.W.3d 250,
255 (Tex. App.—Fort Worth 2001, pet ref’d) (reasonable suspicion that appellant
was intoxicated where vehicle traveling in left passing lane at slow speed with
no other cars in vicinity crossed left lane stripe twice).

            Further,
the time of day and location are relevant factors in determining reasonable
suspicion of intoxication.  See Foster, 326 S.W. 3d at
613; see, e.g., Curtis v. State, 238 S.W.3d 376, 381 (Tex.
Crim. App. 2007) (reasonable suspicion to justify investigation of intoxication
where vehicle weaved three times out of lane over short distance around 1:00
a.m.); Kessler v. State, No. 02-08-270-CR, 2010 Tex. App. LEXIS
2139, at *3 (Tex. App.—Fort Worth Mar. 25, 2010, pet ref’d) (mem. op. on reh’g,
not designated for publication) (reasonable suspicion of driving while
intoxicated where vehicle was close to numerous locations selling alcoholic
beverages at 2:00 a.m., moved abruptly to the left to narrowly miss a curb, and
then did not drive in a single lane); Cook v. State, 63 S.W.3d
924, 928-29 (Tex. App. —Houston [14th Dist.] 2002, pet. ref’d) (reasonable
suspicion of driving while intoxicated where vehicle “constantly” crossed
broken white line into adjacent lane; officer also observed driver leaving bar
“at a considerable rate of speed, pulling into a gas station and leaving within
10-15 seconds, and driving ‘all over the roadway’ of an unmarked road” before
turning onto roadway where weaving took place). 

Application
of Law to Facts

            In
this case, Trooper Bortz testified that he observed Appellant’s vehicle weave
once across the lane dividing line and weave again across either the lane
dividing line or the fog line.  This occurred around 12:30 a.m. on Loop 323 in
Tyler, which is a major roadway.  The State also offered a videotape into
evidence that was made by the officer’s in-car video camera.  Trooper Bortz
told Appellant on the video that he stopped him because Appellant was “all over
the roadway.”  Various comments on the video indicated that Appellant had
recently left a bar.  And finally, Trooper Bortz testified further that
weaving, particularly across the middle line, led him to believe the driver
might be intoxicated or impaired.  Based on the totality of the circumstances,
including the time of night, the location, and Appellant’s weaving, and the
rational inferences to be drawn from those facts, Appellant’s driving was
sufficient to raise a reasonable suspicion of driving while intoxicated in the
mind of a reasonable police officer.  See Foster, 326 S.W.3d at
614.  Therefore, we hold that Trooper Bortz’s initial stop of Appellant was
lawful.  Accordingly, we overrule Appellant’s first issue.

            Because
we conclude that reasonable suspicion existed that Appellant was driving while
intoxicated, we need not address Appellant’s argument that Trooper Bortz did
not have reasonable suspicion to believe Appellant had committed traffic a code
violation.  See Tex. R. App.
47.1.

 

Legality of the Search

            In
his second issue, Appellant contends that the trial court erred in finding that
Appellant’s vehicle was lawfully searched.  

Probable
Cause

            Under
the automobile exception to the warrant requirement, an officer may conduct a
warrantless search of an automobile if the officer has probable cause to
believe the vehicle contains evidence of a crime.  See Powell v.
State, 898 S.W.2d 821, 827-28 (Tex. Crim. App. 1994).  If the
automobile exception authorizes an officer’s search, the officer is permitted
to search every part of the vehicle, as well as any contents therein, that may
conceal the object of the search.  United States v. Ross,
456 U.S. 798, 825, 102 S. Ct. 2157, 2173, 72 L. Ed. 2d 572 (1982); Blaylock
v. State, 125 S.W.3d 702, 705 (Tex. App.—Texarkana 2003, pet.
ref’d).  In determining probable cause,
courts must consider the totality of the circumstances. Angulo v. State,
727 S.W.2d 276, 278 (Tex. Crim. App. 1987).  Although probable cause requires
more than mere suspicion, it requires far less evidence than is needed to
support a conviction or even a finding by a
preponderance of the evidence.  Middleton v. State, 125 S.W.3d
450, 457 (Tex. Crim. App. 2003).  Instead, probable cause exists where officers
have reasonably trustworthy information sufficient to warrant a reasonable
belief that an offense has been or is being committed.  McGee v. State,
105 S.W.3d 609, 614 (Tex. Crim. App. 2003).  The odor of marijuana alone
provides sufficient probable cause for an officer to believe marijuana is
concealed in the vehicle.  Gant v. State, 116 S.W.3d 124, 135
(Tex. App.—Tyler 2003, pet. ref’d).

            The
record in this case shows that Trooper Bortz noticed the smell of both alcohol
and marijuana coming from the vehicle.  Further, Appellant told Bortz that he
drank about two beers earlier that evening.  When running a routine check on
Appellant’s driver’s license, Bortz found that Appellant had an active warrant
out of Smith County for possession of marijuana, a prior DWI conviction, and
numerous drug related charges.  During the initial search of Appellant, Trooper
Bortz found approximately $800 in Appellant’s back pocket.  Trooper Bortz
testified that Appellant’s carrying such “a large sum of money” not contained
in a wallet was not normal.  One of the female passengers gave Trooper Bortz a
false name.  After learning her true identity, Trooper Bortz found that this
passenger had an active warrant as well.  The two females were also acting
“extremely more nervous than normal.”  Trooper Bortz testified that, because he
smelled alcohol and marijuana, he suspected an open container of alcohol or marijuana
was inside the vehicle.

            The
odor of marijuana alone coming from Appellant’s vehicle provided Trooper Bortz
sufficient probable cause to believe marijuana was concealed in the vehicle.  See
Gant, 116 S.W.3d at 135.  During the search, Trooper Bortz
located a rock of cocaine in a plastic bag in the visor above the front
passenger seat.  Based on his training and experience, Trooper Bortz testified
that this type of bag is something that could hold contraband and that the
location of the bag was “out of the ordinary.”  Since Trooper Bortz had
probable cause to believe that Appellant’s vehicle contained contraband, the
automobile exception applied.  Consequently, Trooper Bortz could search every
part of the vehicle and any contents that might conceal the suspected
contraband, including the plastic bag that was ultimately determined to contain
cocaine.  See Ross, 456 U.S. at 825; Blaylock,
125 S.W.3d at 705.  Trooper Bortz’s search of Appellant’s vehicle was lawful. 
Therefore, Appellant’s second issue is overruled.

 

Disposition

            We
affirm the trial court’s order denying Appellant’s motion to
suppress.

 

                                                                                    James T. Worthen

                                                                                          
Chief Justice

 

 

 

Opinion delivered April 20, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J. 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)









                [1] The State also offered a
videotape into evidence that was made by the officer’s in-car video camera.  On
the video, Officer Bortz told Appellant that he stopped him because he was “all
over the roadway.” 

 





                [2] Bortz clarified later that by
“center stripe,” he meant the lane dividing line that separated traffic
traveling in the same direction.  

 





                [3] An operator on a roadway
divided into two or more clearly marked lanes for traffic (1) shall drive as
nearly as practical entirely within a single lane and (2) may not move from the
lane unless that movement can be made safely.  Tex. Transp. Code Ann § 545.060(a) (Vernon 1999).

 






                [4] Bortz also testified that he
stopped Appellant based on concern for his welfare.  The State does not argue,
nor do we address, the community caretaking function as a basis for the stop.





                [5] The State stipulated in this
case that there was not a warrant.